**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ALI VATADI,

Petitioner,

v.

M. BOWEN, *et al.*,

Respondents.

Case No. 5:26-cv-00098-MRA-SSC

**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [1]**

Before the Court is Petitioner's Emergency Motion for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 1.[1] Petitioner, proceeding *pro se*, filed a Petition for a Writ of Habeas

[1] Petitioner's original Petition for Writ of Habeas Corpus was filed on January 2, 2026, and assigned to the undersigned judge as Case No. 5:26-cv-00082-MRA-SSC. Due to a clerical error, when Petitioner's Emergency Motion for Temporary Restraining Order was filed, it opened a new case and was assigned to a different judge and assigned a new case number, rather than being filed in Petitioner's original habeas proceedings. This matter was then designated as related to Petitioner's original habeas proceedings and reassigned to the undersigned judge. The Court hereby consolidates Case No. 5:26-cv-

Corpus on January 2, 2026, asking the Court to immediately release him from the custody of Immigration and Customs Enforcement ("ICE"), or, in the alternative, to order Respondents to provide him with an individualized bond hearing before a neutral arbiter at which Respondents would bear the burden of proving by clear and convincing evidence that his continued detention is justified. *Ali Vatadi v. M. Bowen et al.*, No. 5:25-cv-00082-MRA-SSC, ECF 1 (C.D. Cal. Jan. 1, 2026) ("Pet."). Petitioner's TRO seeks preliminary relief prohibiting Respondents from removing, transferring, or deporting him during the pendency of his habeas petition. ECF 1.

The Court construes Petitioner's TRO Application as incorporating the request for relief stated in the underlying petition. *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) ("[Courts] must construe *pro se* habeas filings liberally."). The Court read and considered the moving and opposing papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

## I. BACKGROUND

Petitioner Ali Vatadi entered the United States in May 2023. Pet. at 2. At that time, Petitioner was released on supervision and subject to reporting and compliance rules. *Id.* Petitioner has been in continuous compliance with the terms of his parole since his release and has not committed any criminal offense or other violation. *Id.* On September 25, 2025, at a scheduled check-in, Petitioner was arrested by ICE and has since been detained at the Adelanto Processing Center. *Id.* Petitioner has an active asylum case pending before the immigration court, and no final order of removal has been issued against him. *Id.* After his arrest, Petitioner requested a bond hearing but was "compelled to withdraw" that request "[b]ased on the statement by the [immigration judge]." *Id.*

---

00082-MRA-SSC and Case No. 5:26-cv-00098-MRA-SSC for all purposes pursuant to Federal Rule of Civil Procedure 42.

Petitioner seeks an order requiring Respondents M. Bowen, Warden of the Adelanto Detention Facility; Kristi Noem, Secretary of Department of Homeland Security; Pamela Bondi, United States Attorney General; Thomas Giles, ICE Field Office Director; and James Pilkington, Assistant Field Office Director, Adelanto Detention Facility (collectively, "Respondents" or the "government") to immediately release him or otherwise provide him an individualized bond hearing. Pet. at 4. The TRO further requests that the Court enjoin Respondents from removing, transferring, or deporting Petitioner during the pendency of his habeas litigation. ECF 1 at 5.

Petitioner argues that his prolonged detention without any due process, including an individualized determination that Petitioner is a flight risk or poses a danger to the community, violates his due process rights. Pet. at 3; ECF 1 at 4. Petitioner further alleges that his continued detention has caused severe and emotional distress. Pet. at 3.

On February 11, 2026, Respondents filed an Opposition to the TRO Application. ECF 7. Respondents argue that the government retains discretion as to where to detain Petitioner, and that Petitioner has not demonstrated any irreparable harm that would arise from being transferred to another district. *Id.* at 4–5. Respondents further argue that the government is allowed to detain noncitizens during removal proceedings. *Id.* at 5–6. Respondents do not meaningfully respond to Petitioner's primary contention—that prolonged, ongoing detention violates his due process rights.

## II. LEGAL STANDARD

The same standard applies for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success

on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

## III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, and that the balance of hardships tips sharply in his favor.

### A. Likelihood of Success on the Merits

It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same). The government does not dispute this.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at

stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests.

The government does not address the *Mathews* test. Nor does the government dispute that noncitizens, like Petitioner, have constitutional procedural due process rights—including the right to be free from unlawful detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (private interest in freedom from detention is "the most elemental of liberty interests"). Instead, the government argues that it is permitted to detain noncitizens during the pendency of removal proceedings pursuant to 8 U.S.C. § 1226(a). ECF 7 at 5–6. But § 1226(a) is not an end-run around the Constitution. As the Ninth Circuit has recognized, "[w]hile the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Civil immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. In releasing Petitioner on parole, the government necessarily determined that he was not a flight risk or danger. *See* 8 C.F.R § 1236.1(c)(8) (authorizing release of noncitizens under § 1226(a) if an officer determines that they "would not pose a danger to property or persons," and are "likely to appear for any future proceeding"); 8 C.F.R. § 212.5(b) (authorizing parole from custody of noncitizens deemed "neither a security risk nor a risk of absconding."); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025) (same); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *17 (E.D. Cal. Oct. 16, 2025) (same). Thus, to re-detain Petitioner following release, the government must present "evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has

become a flight risk or is now subject to a final order of removal." *Saravia*, 280 F. Supp. 3d at 1176.

Here, the government makes no effort to show that Petitioner is a flight risk or danger to the community. *See generally* ECF 7. According to his Petition, Petitioner complied with all conditions of his parole and did not commit any violation that would justify detention. Pet. at 2. The government does not dispute that Petitioner was compliant while on supervision and attended his regular check-ins, which would support a finding that he is not a flight risk.

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025). Where an individual has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh*, 2025 WL 1918679, at *7. Here, the risk of erroneous deprivation is high, because after ICE made the determination that Petitioner was not flight risk or danger, he was redetained without any opportunity to contest the basis for his re-detention. The government does not address these arguments at all or present any countervailing interest in re-detaining Petitioner without a pre-deprivation bond hearing. To be clear, the government does not argue that Petitioner is a flight risk or danger to the community. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros*, 2025 WL 2637503, at *12 (citing *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025)). Moreover, custody hearings are "routine and impose a 'minimal' cost." *Singh v. Andrews*, 803 F. Supp. 1035, 1047–48 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). "The government's interest is further diminished where a person "has consistently appeared for [his] immigration hearings ... and [ ] does not have a criminal record." *Id.* at 1048 (quoting *Pinchi*, 2025 WL 1853763, at *2).

Thus, based on the record before the Court, each *Mathews* factor favors Petitioner and demonstrates that he is likely to succeed on the merits or at least has demonstrated

serious questions going to the merits of his procedural due process claim—that is, that he should have received process before he was detained. *Id.* ("'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'") (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)) (other internal citations omitted).

**B. Irreparable Harm**

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). Moreover, Petitioner alleges that the "uncertainty of prolonged confinement, combined with continued detention at Adelanto Ice Processing Center, has resulted in significant psychological harm, anxiety, and emotional suffering." Pet. at 3.

**C. Other *Winter* Factors**

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The government's opposition does not address these factors. ECF 7.

Nevertheless, the Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is

generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

**D. Scope of Relief**

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). In the underlying petition, Petitioner seeks his immediate release or, in the alternative, an individualized bond hearing. The TRO Application additionally seeks to enjoin Respondents from removing, transferring, or deporting him during the pendency of his removal proceedings. The government argues that Petitioner's request to prevent transfer is overly broad, and that habeas proceedings may not be used to bar Petitioner's removal. ECF 7 at 6–7.

For the reasons explained above, the Court is persuaded that a pre-deprivation hearing is warranted in this case given Petitioner's substantial liberty interests; the government's decision to re-detain Petitioner without notice or an opportunity to respond to any claim of changed circumstances requiring detention; and the government's failure to establish that Petitioner is a flight risk or danger. Numerous district courts, including this Court, have granted the same relief Petitioner seeks here. *See, e.g.*, *Garcia Mejia v. Noem*, No. 5:25-cv-03504-MRA-JDE, ECF 13 (C.D. Cal. Jan. 5, 2026); *Juarez Fernandez v. Semaia*, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 (C.D. Cal. Jan. 13, 2026) (granting immediate release where noncitizen's parole was revoked without due process); *M.V.F.*, 2025 WL 369141, at *8 (same); *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321 (S.D. Cal. Dec. 23, 2025) (same).

Moreover, "[d]istrict courts in immigration habeas actions . . . retain the inherent equitable authority to restrict the transfer of petitioners during the pendency of the proceedings." *Quijada Cordoba v. Knight*, No. 1:25-CV-00605-BLW, 2025 WL 3228945, at *4 (D. Idaho Nov. 19, 2025) (citing *Oliveros v. Kaiser*, No. 25-CV07117-BLF, 2025

WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025)). Because the Court orders Petitioner's immediate release, it need not address this question at this time. However, should Petitioner be re-detained unlawfully, Petitioner may request that the Court bar any transfer given its effect on Petitioner's ability to effectively litigate this case. *See Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *7 (N.D. Cal. Aug. 21, 2025) ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, provide Petitioner ready access to medical and legal services, and address concerns about the conditions of her detention."); *see also Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03229-JAK-MBK, 2025 WL 4065463, at *7 (C.D. Cal. Dec. 26, 2025), *report and recommendation adopted sub nom. Vilca Yataco v. Warden Adelanto Det. Facility*, No. 5:25-CV-03229-JAK (MBK), 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("Petitioner's transfer would frustrate his ability to continue to litigate his habeas petition . . . . As such, it is reasonable to prevent Petitioner's transfer outside the District during the relatively short period it will take to resolve this petition.").

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Petitioner shall be **IMMEDIATELY RELEASED** from custody;
2. Respondents are **ENJOINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing. At any such hearing, Respondents shall bear the burden of

establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community;

3. Respondents are **ORDERED** to file reliable proof with this Court that Petitioner has been released by no later than February 13, 2026, at 5:00 p.m. Failure to do so may result in sanctions;

4. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written response to the Order to Show Cause no later than **February 19, 2026**. **Failure to file a response will be deemed consent to the issuance of the preliminary injunction.** Upon receipt of Respondents' response, the Court may order Petitioner to file a reply if necessary. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **February 19, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 12, 2026**, and expires at 4:30 p.m. on **February 26, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: February 12, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE